(Slip Opinion) OCTOBER TERM, 2009 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNION PACIFIC RAILROAD CO. *v.* BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN GENERAL COMMITTEE OF ADJUSTMENT, CENTRAL REGION

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 08–604. Argued October 7, 2009—Decided December 8, 2009

The Railway Labor Act (RLA or Act) was enacted to promote peaceful and efficient resolution of labor disputes. As amended, the Act mandates arbitration of "minor disputes" before panels composed of two representatives of labor and two of industry, with a neutral referee as tiebreaker. *Union Pacific R. Co.* v. *Price*, 360 U. S. 601, 610–613. To supply arbitrators, Congress established the National Railroad Adjustment Board (NRAB or Board), a board of 34 private persons representing labor and industry in equal numbers. 45 U. S. C. §153 First (a). Before resorting to arbitration, employees and carriers must exhaust the grievance procedures in their collective-bargaining agreement (hereinafter CBA), see §153 First (i), a stage known as "on-property" proceedings. As a final prearbitration step, the parties must attempt settlement "in conference" between representatives of the carrier and the grievant-employee. §152 Second, Sixth. The RLA contains instructions concerning the place and time of conferences, but does not "supersede the provisions of any agreement (as to conferences) . . . between the parties," §152 Sixth; in common practice the conference may be as informal as a telephone conversation. If the parties fail to achieve resolution, either may refer the matter to the NRAB. §153 First (i). Submissions to the Board must include "a full statement of the facts and all supporting data bearing upon the disputes." *Ibid.* Parties may seek court review of an NRAB panel order on one or more stated grounds: "failure . . . to comply with the requirements of [the RLA], . . . failure of the order to conform, or con-

fine itself, to matters within the scope of the division's jurisdiction, or
. . . fraud or corruption by a member of the division making the or-
der." §153 First (q). Courts of Appeals have divided on whether, in
addition to the statutory grounds for judicial review stated in §153
First (q), courts may review NRAB proceedings for due process viola-
tions.

After petitioner Union Pacific Railroad Co. (hereinafter Carrier)
charged five of its employees with disciplinary violations, their union
(hereinafter Union) initiated grievance proceedings pursuant to the
CBA. The Union asserts that the parties conferenced all five dis-
putes and the Carrier concedes that they conferenced at least two.
Dissatisfied with the outcome of the on-property proceedings, the Un-
ion sought arbitration before the NRAB's First Division. Both parties
filed submissions in the five cases, but neither mentioned conferenc-
ing as a disputed matter. Yet, in each case, both parties necessarily
knew whether the Union and the Carrier had conferred; and the
Board's governing rule, published in Circular One, which prescribes
Board procedures, instructs carriers and employees to "set forth all
relevant, argumentative facts," 29 CFR §301.5(d), (e). Just prior to
the hearing, one of the arbitration panel's industry representatives
objected, *sua sponte*, that the on-property record included no proof of
conferencing. The Carrier thereafter embraced that objection. The
referee allowed the Union to submit evidence of conferencing. The
Union did so, but it maintained that the proof-of-conferencing issue
was untimely raised, indeed forfeited, as the Carrier had not objected
before the date set for argument. The panel, in five identical deci-
sions, dismissed the petitions for want of jurisdiction. The record
could not be supplemented to meet the no-proof-of-conferencing objec-
tion, the panel reasoned, for as an appellate tribunal, the panel was
not empowered to consider *de novo* evidence and arguments. The Un-
ion sought review in the Federal District Court, which affirmed the
Board's decision. On appeal, the Seventh Circuit observed that the
"single question" at issue was whether written documentation of the
conference in the on-property record was a necessary prerequisite to
NRAB arbitration, and determined that there was no such prerequi-
site in the statute or rules. But instead of resting its decision on the
Union's primary, statute-based argument—that the panel erred in
ruling that it lacked jurisdiction over the cases—it reversed on the
ground that the NRAB's proceedings were incompatible with due
process.

*Held:*

1. The Seventh Circuit erred in resolving the Union's appeal under
a constitutional, rather than a statutory, headline. This Court
granted certiorari to address whether NRAB orders may be set aside

for failure to comply with due process notwithstanding §153 First (q)'s limited grounds for review. But so long as a respondent does not "seek to modify the judgment below," true here, the respondent may "rely upon any matter appearing in the record in support of the judgment." *Blum* v. *Bacon*, 457 U. S. 132, 137, n. 5. The Seventh Circuit understood that the Union had pressed "statutory and constitutional" arguments, but observed that both arguments homed in on a "single question": is written documentation of the conference in the on-property record a necessary prerequisite to NRAB arbitration? Answering this "single question" in the negative, the Seventh Circuit effectively resolved the Union's core complaint. Because nothing in the Act elevates to jurisdictional status the obligation to conference minor disputes or to prove conferencing, a negative answer to the "single question" leaves no doubt about the Union's entitlement, in accord with §153 First (q), to vacation of the Board's orders. Given this statutory ground for relief, there is no due process issue alive in this case, and no warrant to answer a question that may be consequential in another case. Nevertheless, the grant of certiorari here enables this Court to reduce confusion, clouding court as well as Board decisions, over matters properly typed "jurisdictional." Pp. 10–12.

   2. Congress authorized the Board to prescribe rules for presenting and processing claims, §153 First (v), but Congress alone controls the Board's jurisdiction. By refusing to adjudicate the instant cases on the false premise that it lacked "jurisdiction" to hear them, the NRAB panel failed "to conform, or confine itself, to matters [Congress placed] within the scope of [NRAB] jurisdiction," §153 First (q). Pp. 12–17.

       (a) Not all mandatory "prescriptions, however emphatic, 'are . . . properly typed "jurisdictional."'" *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 510. Subject-matter jurisdiction properly comprehended refers to a tribunal's "'power to hear a case,'" and "'can never be forfeited or waived.'" *Id.*, at 514. In contrast, a "claim-processing rule" does not reduce a tribunal's adjudicatory domain and is ordinarily "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick* v. *Ryan*, 540 U. S. 443, 456. For example, this Court has held nonjurisdictional and forfeitable the provision in Title VII of the Civil Rights Act of 1964 requiring complainants to file a timely discrimination charge with the Equal Employment Opportunity Commission (EEOC) before proceeding to court, *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 393. In contrast, the Court has reaffirmed the jurisdictional character of 28 U. S. C. §2107(a)'s time limitation for filing a notice of appeal. *Bowles* v. *Russell*, 551 U. S. 205, 209–211. Here, the requirement that parties to minor disputes, as a last

chance prearbitration, attempt settlement "in conference," is imposed
on carriers and grievants alike, but satisfaction of that obligation
does not condition the Board's adjudicatory authority, which extends
to "all disputes between carriers and their employees 'growing out of
grievances or out of the interpretation or application of agreements
concerning rates of pay, rules, or working conditions . . . ,'" *Slocum* v.
*Delaware, L. & W. R. Co.*, 339 U. S. 239, 240 (quoting §153 First (i)).
When a CBA's grievance procedure has not been followed, resort to
the Board would ordinarily be objectionable as premature, but the
conference requirement is independent of the CBA process.  Rooted in
§152, the RLA's "[g]eneral duties" section, and not moored to the
NRAB's "[e]stablishment[,] . . . powers[,] and duties" set out in §153
First, conferencing is often informal in practice, and is no more "ju-
risdictional" than is the presuit resort to the EEOC held nonjurisdic-
tional and forfeitable in *Zipes*.  And if the conference requirement is
not "jurisdictional," then failure initially to submit proof of conferenc-
ing cannot be of that genre.  And although the Carrier alleges that
NRAB decisions support characterizing conferencing as jurisdic-
tional, if the NRAB lacks authority to define its panels' jurisdiction,
surely the panels themselves lack that authority.   Furthermore,
NRAB panels have variously addressed the matter.  Pp. 12–15.

(b) Neither the RLA nor Circular One could plausibly be read to
require, as a prerequisite to the NRAB's exercise of jurisdiction, sub-
mission of proof of conferencing.  Instructions on party submissions
are claim-processing, not jurisdictional, rules.  The Board itself has
recognized that conferencing may not be a "question in dispute," and
when that is so, proof thereof need not accompany party submissions.
It makes sense to exclude at the arbitration stage newly presented
"data" supporting the employee's grievance, 29 CFR §301(d)—
evidence the carrier had no opportunity to consider prearbitration.
But conferencing is not a fact bearing on the merits of a grievance.
Moreover, the RLA respects the parties' right to order for themselves
the conference procedures they will follow.  See 45 U. S. C. §152
Sixth.  Pp. 16–17.

522 F. 3d 746,  affirmed.

GINSBURG, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–604

UNION PACIFIC RAILROAD COMPANY, PETITIONER
*v.* BROTHERHOOD OF LOCOMOTIVE ENGINEERS
AND TRAINMEN GENERAL COMMITTEE OF
ADJUSTMENT, CENTRAL REGION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[December 8, 2009]

JUSTICE GINSBURG delivered the opinion of the Court.

"It is most true that this Court will not take jurisdiction if it should not," Chief Justice Marshall famously wrote, "but it is equally true, that it must take jurisdiction if it should. . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821); see *Marshall* v. *Marshall*, 547 U. S. 293, 298–299 (2006). While Chief Justice Marshall's statement bears "fine tuning," there is surely a starting presumption that when jurisdiction is conferred, a court may not decline to exercise it. See R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart & Wechsler's The Federal Courts and the Federal System 1061–1062 (6th ed. 2009). The general rule applicable to courts also holds for administrative agencies directed by Congress to adjudicate particular controversies.

Congress vested in the National Railroad Adjustment Board (hereinafter NRAB or Board) jurisdiction to adjudi-

cate grievances of railroad employees that remain unsettled after pursuit of internal procedures. 45 U. S. C. §153 First (h), (i). We consider in this case five nearly identical decisions of a panel of the NRAB dismissing employee claims "for lack of jurisdiction." NRAB First Div. Award No. 26089 etc. (Mar. 15, 2005), App. to Pet. for Cert. 65a–107a, 69a (hereinafter Panel Decision). In each case, the panel declared that a procedural rule raised by a panel member, unprompted by the parties, was "jurisdictional" in character and therefore commanded threshold dismissal.

The panel's characterization, we hold, was misconceived. Congress authorized the Board to prescribe rules for the presentation and processing of claims, §153 First (v), but Congress alone controls the Board's jurisdiction. By presuming authority to declare procedural rules "jurisdictional," the panel failed "to conform, or confine itself, to matters [Congress placed] within the scope of [NRAB] jurisdiction," §153 First (q). Because the panel was not "without authority to assume jurisdiction over the [employees'] claim[s]," Panel Decision 72a, its dismissals lacked tenable grounding. We therefore affirm the judgment of the Seventh Circuit setting aside the panel's orders.

## I
### A

Concerned that labor disputes would lead to strikes bringing railroads to a halt, Congress enacted the Railway Labor Act (RLA or Act), 44 Stat. 577, as amended, 45 U. S. C. §151 *et seq.*, in 1926 to promote peaceful and efficient resolution of those disputes. See *Union Pacific R. Co.* v. *Price*, 360 U. S. 601, 609 (1959); §151a. The Act instructs labor and industry "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all

disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier . . . ." §152 First; see *Trainmen* v. *Jacksonville Terminal Co.*, 394 U. S. 369, 377–378 (1969) (describing obligation to pursue agreement as the "heart of the [RLA]"). As part of its endeavor, Congress provided a framework for the settlement and voluntary arbitration of "minor disputes." See *Price*, 360 U. S., at 609–610. (In the railroad industry, the term "minor disputes" means, primarily, "grievances arising from the application of collective bargaining agreements to particular situations." *Id.*, at 609.)[1]

Many railroads, however, resisted voluntary arbitration. See *id.,* at 610. Congress therefore amended the Act in 1934 (1934 Amendment) to mandate arbitration of minor disputes; under the altered scheme, arbitration occurs before panels composed of two representatives of labor and two of industry, with a neutral referee serving as tiebreaker. See *id.*, at 610–613. To supply the representative arbitrators, Congress established the NRAB, a board of 34 private persons representing labor and industry in equal numbers. §153 First (a); see *Trainmen* v. *Chicago R. & I. R. Co.*, 353 U. S. 30, 36–37 (1957).[2] Neutral referees, the RLA provides, shall be appointed by the representative arbitrators or, failing their agreement, by the National Mediation Board. §153 First (*l*). The 1934 Amendment authorized the NRAB to adopt, at a one-time session in 1934, "such rules as it deems necessary to control pro-

---

[1] In contrast to minor disputes, which assume "the existence of a collective agreement," major disputes are those "over the formation of collective agreements or efforts to secure them. . . . They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past." *Elgin, J. & E. R. Co.* v. *Burley*, 325 U. S. 711, 723 (1945).

[2] The RLA divides the NRAB into four Divisions, each covering specified classes of railroad employees. §153 First (h).

ceedings," §153 First (v); the product of that rulemaking, codified at 29 CFR pt. 301 (2009), is known as Circular One.

In keeping with Congress' aim to promote peaceful settlement of minor disputes, the RLA requires employees and carriers, before resorting to arbitration, to exhaust the grievance procedures specified in the collective-bargaining agreement (hereinafter CBA). See 45 U. S. C. §153 First (i). This stage of the dispute-resolution process is known as "on-property" proceedings. As a final prearbitration step, the Act directs parties to attempt settlement "in conference" between designated representatives of the carrier and the grievant-employee. §152 Second, Sixth.[3] The RLA contains instructions concerning the place and time of conferences, but specifies that the statute does not

-----

[3] Central to the instant controversy, §152 Second, Sixth read, in full:

"Second. Consideration of disputes by representatives.

All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute."

"Sixth. Conference of representatives; time; place; private agreements.

In case of a dispute between a carrier or carriers and its or their employees, arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, it shall be the duty of the designated representative or representatives of such carrier or carriers and of such employees, within ten days after the receipt of notice of a desire on the part of either party to confer in respect to such dispute, to specify a time and place at which such conference shall be held: *Provided*, (1) That the place so specified shall be situated upon the line of the carrier involved or as otherwise mutually agreed upon; and (2) that the time so specified shall allow the designated conferees reasonable opportunity to reach such place of conference, but shall not exceed twenty days from the receipt of such notice: *And provided further*, That nothing in this chapter shall be construed to supersede the provisions of any agreement (as to conferences) then in effect between the parties."

"supersede the provisions of any agreement (as to conferences) . . . in effect between the parties," §152 Sixth; it is undisputed that in common practice the conference may be as informal as a telephone conversation.

If the parties fail to achieve resolution "in the usual manner up to and including the chief operating officer of the carrier designated to handle [minor] disputes," either party may refer the matter to the NRAB. §153 First (i). Submissions to the Board must include "a full statement of the facts and all supporting data bearing upon the disputes." *Ibid.*; see 29 CFR §301.5(d), (e) (submissions "must clearly and briefly set forth all relevant, argumentative facts, including all documentary evidence"). Arbitration is launched when the party referring the dispute files a notice of intent with the NRAB; after Board acknowledgment of the notice, the parties have 75 days to file simultaneous submissions. NRAB, Uniform Rules of Procedure (rev. June 23, 2003).

In creating the scheme of mandatory arbitration superintended by the NRAB, the 1934 Amendment largely "foreclose[d] litigation" over minor disputes. *Price*, 360 U. S., at 616; see *Railway Conductors* v. *Pitney*, 326 U. S. 561, 566 (1946) ("Not only has Congress . . . designated an agency peculiarly competent to handle [minor disputes], but . . . it also intended to leave a minimum responsibility to the courts."). Congress did provide that an employee who obtained a monetary award against a carrier could sue to enforce it, and the court could either enforce the award or set it aside. *Price*, 360 U. S., at 616; 45 U. S. C. §153 First (p) (1934 ed.). In addition to that limited role, some Courts of Appeals, we noted in *Price*, reviewed awards "claimed to result from a denial of due process of law." 360 U. S., at 616 (citing *Ellerd* v. *Southern Pacific R. Co.*, 241 F. 2d 541 (CA7 1957); *Barnett* v. *Pennsylvania-Reading Seashore Lines*, 245 F. 2d 579, 582 (CA3 1957)).

In 1966, Congress again amended the scheme, this time

to state grounds on which both employees and railroads could seek judicial review of NRAB orders. The governing provision, still in force, allows parties aggrieved by an NRAB panel order to petition for court review. 45 U. S. C. §153 First (q) (2006 ed.). The provision instructs that

> "[o]n such review, the findings and order of the division shall be conclusive on the parties, except that the order . . . may be set aside, in whole or in part, or remanded . . . , for failure of the division to comply with the requirements of [the RLA], for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

Courts of Appeals have divided on whether this provision precludes judicial review of NRAB proceedings for due process violations. Compare, *e.g.*, *Shaffi* v. *PLC British Airways*, 22 F. 3d 59, 64 (CA2 1994) (review available), and *Edelman* v. *Western Airlines, Inc.*, 892 F. 2d 839, 847 (CA9 1989) (same), with *Kinross* v. *Utah R. Co.*, 362 F. 3d 658, 662 (CA10 2004) (review precluded).[4]

––––––––––

[4] The disagreement stems from this Court's *per curiam* opinion in *Union Pacific R. Co.* v. *Sheehan*, 439 U. S. 89 (1978). That case involved an NRAB decision turning on a time limitation contained in the governing CBA. Based on that limitation, the Board dismissed an employee's claim. The Tenth Circuit remanded the case to the NRAB on the ground that the Board had failed to consider the employee's equitable tolling argument and thereby violated due process. We summarily reversed, observing that the Board had in fact considered the plea for equitable tolling and explicitly rejected it. *Id.*, at 92. We added that if the Court of Appeals "intended to reverse the [NRAB's] rejection of [the employee's] equitable tolling argument," then the court had exceeded the bounds §153 First (q) placed on its review authority. *Id.*, at 93. In determining whether the CBA's time limitation was tolled, we said, the Board "certainly was acting within its jurisdiction and in conformity with . . . the Act." *Ibid.*

### B

The instant matter arose when petitioner Union Pacific Railroad Co. (hereinafter Carrier) charged five of its employees with disciplinary violations. Their union, the Brotherhood of Locomotive Engineers and Trainmen (hereinafter Union), initiated grievance proceedings pursuant to the CBA. The Union asserts that, following exhaustion of grievance proceedings, the parties conferenced all the disputes; counsel for the Carrier conceded at argument that at least two of the disputes were conferenced, Tr. of Oral Arg. 7. Dissatisfied with the outcome of the on-property proceedings, the Union sought arbitration before the First Division of the NRAB. The Union and the Carrier, from early 2002 through 2003, filed simultaneous submissions in the five cases. In each submission, the Union included the notice of discipline (or discharge), the hearing transcript, and all exhibits and evidence relating to the underlying adverse actions used in the grievance proceeding. Neither party mentioned conferencing as a disputed matter. Yet, in each case, both parties necessarily knew whether the Union and the Carrier had conferred, and the Board's governing rule instructs carriers and employees to "set forth all relevant, argumentative facts," 29 CFR §301.5(d), (e).

On March 18, 2004, just prior to the hearing on the employees' claims, one of the industry representatives on the arbitration panel raised an objection. Petition to Review and Vacate Awards and Orders of First Div. NRAB in No. 05–civ–2401 (ND Ill.), ¶20 (hereinafter Pet. to Review). On his own initiative, unprompted by the Carrier, and in executive session, the industry representative asserted that the on-property record included no proof of conferencing. See *ibid.* The Carrier thereafter embraced the panel member's objection. The neutral referee informed the Union of the issue and adjourned the hearing, allowing the Union "to submit evidence that confer-

encing had in fact occurred." See *id.*, ¶¶21–23. The Union did so, offering phone logs, handwritten notes, and correspondence between the parties as evidence of conferencing in each of the five cases. *E.g.*, Panel Decision 67a–68a. From its first notice of the objection, however, the Union maintained that the proof-of-conferencing issue was untimely raised, indeed forfeited, as the Carrier itself had not objected prior to the date set for argument of the cases. *E.g.*, *id.*, at 67a; Pet. to Review ¶¶22, 29, 30, 54.

On March 15, 2005, nearly one year after the question of conferencing first arose, the panel, in five identical decisions, dismissed the petitions for want of "authority to assume jurisdiction over the claim[s]." Panel Decision 72a. Citing Circular One, see *supra*, at 3–4, and "the weight of arbitral precedent," the panel stated that "the evidentiary record" must be deemed "closed once a Notice of Intent has been filed with the NRAB . . . ." Panel Decision 71a.[5] In explaining why the record could not be supplemented to meet the no-proof-of-conferencing objection, the panel emphasized that it was "an appellate tribunal, as opposed to one which is empowered to consider and rule on *de novo* evidence and arguments." *Id.*, at 69a.

The two labor representatives dissented. The Carrier's submissions, they reasoned, took no exception based on failure to conference or to prove conferencing; therefore, they concluded, under a "well settled principle governing the Board's deliberations," the Carrier had forfeited the issue. *Id.*, at 105a–106a. The dissenters urged that the Union had furnished evidence showing "the cases had all been conferenced, even though the relevant Collective Bargaining Agreement [did] not require [conferencing]." *Id.*, at 105a. Dismissal of the claims, the dissenters

---

[5] The panel observed, however, that the records and notes offered by the Union, "on their face, may be regarded as supportive of its position that the conference[s] occurred." Panel Decision 69a.

charged, demonstrated "the kind of gamesmanship that breeds contempt for the minor dispute process." *Id.*, at 107a.

The Union filed a petition for review in the United States District Court for the Northern District of Illinois, asking the court to set aside the Board's orders on the ground that the panel had "unlawfully held [it lacked] authority to assume jurisdiction over [the] cases [absent] evidence of a 'conference' between the parties in the . . . 'on-property' record." Pet. to Review ¶1. Nothing in the Act or the NRAB's procedural rules, the Union maintained, mandated dismissal for failure to allege and prove conferencing in the Union's original submission. *Id.*, ¶¶3, 4. By imposing, without warrant, "a technical pleading or evidentiary requirement" and elevating it to jurisdictional status, the Union charged, the panel had "egregiously violate[d] the Act," *id.*, ¶3, or "fail[ed] to conform its jurisdiction to that required by . . . law," *id.*, ¶4. Alternatively, the Union asserted that the panel violated procedural due process by entertaining the Carrier's untimely objection, even though "the Carrier had failed to raise any objection as to lack of conferencing" in its submissions. *Id.*, ¶5.

The District Court affirmed the Board's orders. Addressing the Union's argument that the no-proof-of-conferencing issue was untimely raised, the court accepted the panel's description of the issue as "jurisdictional," and noted the familiar proposition that jurisdictional challenges may be raised at any stage of the proceedings. 432 F. Supp. 2d 768, 777, and n. 7 (2006).

On appeal, the Seventh Circuit recognized that the Union had presented its case "through both a statutory and constitutional framework." 522 F. 3d 746, 750 (2008). The court observed, however, that "the essence of the conflict boils down to a single question: is written documentation of the conference in the on-property record a necessary prerequisite to arbitration before the NRAB?"

*Ibid.* It then determined that there was no such prerequisite: "[N]o statute, regulation, or CBA," the court concluded, "required the evidence [of conferencing] to be presented in the on-property record." *Id.*, at 757–758. But instead of resting its decision on the Union's primary, statute-based argument—that the panel erred in ruling that it lacked jurisdiction over the cases—the Court of Appeals reversed on the ground that the NRAB's proceedings were incompatible with due process. See *id.*, at 750.

## II

We granted the Carrier's petition for certiorari, 555 U. S. ___ (2009), which asked us to determine whether a reviewing court may set aside NRAB orders for failure to comply with due process notwithstanding the limited grounds for review specified in §153 First (q).[6] As earlier recounted, Courts of Appeals have divided on this issue. See *supra,* at 6, and n. 4. Appearing as respondent in this Court, however, the Union urged affirmance of the Seventh Circuit's judgment on an alternative ground. Reasserting the lead argument it had advanced in its petition for court review, see *supra*, at 9, the Union maintained that the Board did not "conform, or confine itself, to matters within the scope of [its] jurisdiction," §153 First (q). Brief for Respondent 52–53. In response, the Carrier stated that the Union's alternative ground "presents a pure question of law that th[e] Court can and should resolve without need for remand." Reply Brief 24, n. 9. We agree.

So long as a respondent does not "seek to modify the judgment below," true here, "[i]t is well accepted" that the

––––––––––

[6] Quoted *supra*, at 6, those grounds are "failure of the division to comply with [RLA] requirements," "failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction," and "fraud or corruption by a member of the division making the order."

respondent may, "without filing a cross-appeal or cross-petition, . . . rely upon any matter appearing in the record in support of the judgment." *Blum* v. *Bacon*, 457 U. S. 132, 137, n. 5 (1982). The Seventh Circuit, as just observed, see *supra*, at 9–10, understood that the Union had pressed "statutory and constitutional" arguments, but also comprehended that both arguments homed in on "a single question: is written documentation of the conference in the on-property record a necessary prerequisite to arbitration before the NRAB?" 522 F. 3d, at 750. Answering this "single question" in the negative, the Court of Appeals effectively resolved the Union's core complaint. But, for reasons far from apparent, the court declared that "once we answer the key question . . . , adjudication of the due process claim is unavoidable." *Ibid.*

The Seventh Circuit, we agree, asked the right question, but inappropriately placed its answer under a constitutional, rather than a statutory, headline. As the Court of Appeals determined, and as we discuss *infra*, at 12–17, nothing in the Act elevates to jurisdictional status the obligation to conference minor disputes or to prove conferencing. That being so, the "unavoidable" conclusion, following from the Seventh Circuit's "answer [to] the key question," 522 F. 3d, at 750, is that the panel, in §153 First (q)'s words, failed "to conform, or confine itself, to matters within the scope of [its] jurisdiction." The Carrier, although it sought a different outcome, was quite right to "urg[e] [the Court of Appeals] to consider the statutory claim before the constitutional one." 522 F. 3d, at 750.

In short, a negative answer to the "single question" identified by the Court of Appeals leaves no doubt about the Union's entitlement, in accord with §153 First (q), to vacation of the Board's orders. Given this statutory ground for relief, there is no due process issue alive in this case, and no warrant to answer a question that may be consequential in another case: Absent grounds specified in

§153 First (q) for vacating a Board order, may a reviewing court set aside an NRAB adjudication for incompatibility with due process? An answer to that question must await a case in which the issue is genuinely in controversy.[7] In this case, however, our grant of certiorari enables us to address a matter of some importance: We can reduce confusion, clouding court as well as Board decisions, over matters properly typed "jurisdictional."

### III
### A

Recognizing that the word "jurisdiction" has been used by courts, including this Court, to convey "many, too many, meanings," *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 90 (1998) (internal quotation marks omitted), we have cautioned, in recent decisions, against profligate use of the term. Not all mandatory "prescriptions, however emphatic, are . . . properly typed jurisdictional," we explained in *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 510 (2006) (internal quotation marks omitted). Subject-matter jurisdiction properly comprehended, we emphasized, refers to a tribunal's "power to hear a case," a matter that "can never be forfeited or waived." *Id.*, at 514 (quoting *United States* v. *Cotton*, 535 U. S. 625, 630 (2002)). In contrast, a "claim-processing rule, . . . even if unalterable on a party's application," does not reduce the adjudicatory domain of a tribunal and is ordinarily "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick* v. *Ryan*, 540 U. S. 443, 456 (2004).

––––––––––

[7] A case of that order would be uncommon. As the Carrier acknowledges, "many of the cases reviewing ostensibly extra-statutory due process objections could have been accommodated within the statutory framework." Brief for Petitioner 36. See also *id.*, at 37 ("The statutory review provisions are plainly generous enough to permit litigants to raise all of the simple, common, easily adjudicated, and likely to be meritorious claims that sail under the flag of due process of law . . . .").

For example, we have held nonjurisdictional and forfeitable the provision in Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e *et seq.*, requiring complainants to file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) before proceeding to court. *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 393 (1982). We have also held nonjurisdictional and forfeitable the Title VII provision exempting employers who engage fewer than 15 employees. *Arbaugh*, 546 U. S., at 503, 515–516. And we have determined that a Chapter 7 trustee's (or creditor's) limited time to object to the debtor's discharge, see Fed. Rule Bkrtcy. Proc. 4004, is a claim-processing, not a jurisdictional, matter. *Kontrick*, 540 U. S., at 446–447, 460. In contrast, relying on a long line of this Court's decisions left undisturbed by Congress, we have reaffirmed the jurisdictional character of the time limitation for filing a notice of appeal stated in 28 U. S. C. §2107(a). *Bowles* v. *Russell*, 551 U. S. 205, 209–211 (2007). See also *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 132 (2008) (court must consider *sua sponte* timeliness of lawsuit filed against the United States in the Court of Federal Claims).

With these decisions in mind, we turn back to the requirement that parties to minor disputes, as a last chance prearbitration, attempt settlement "in conference," 45 U. S. C. §152 Second, Sixth. See *supra*, at 4–5, and n. 3. This obligation is imposed on carriers and grievants alike but, we hold, its satisfaction does not condition the adjudicatory authority of the Board.

The Board's jurisdiction extends to "all disputes between carriers and their employees 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . .'" *Slocum* v. *Delaware, L. & W. R. Co.*, 339 U. S. 239, 240 (1950) (quoting §153 First (i)). True, the RLA instructs that, before any reference to arbitration, the dispute "shall

be handled in the usual manner up to and including the
[designated] chief operating officer." §153 First (i). And
when the CBA's grievance procedure has not been fol-
lowed, resort to the Board would ordinarily be objection-
able as premature.

The additional requirement of a conference, we note, is
independent of the CBA process. Rather, the conference
requirement is stated in the "[g]eneral duties" section of
the RLA, §152, a section that is not moored to the
"[e]stablishment[,] . . . powers[,] and duties" of the NRAB
set out next in §153 First. Rooted in §152 and often in-
formal in practice, see *supra,* at 4–5, conferencing is surely
no more "jurisdictional" than is the presuit resort to the
EEOC held forfeitable in *Zipes*, 455 U. S., at 393.[8] And if
the requirement to conference is not "jurisdictional," then
failure initially to submit proof of conferencing cannot be
of that genre. See Part III–B, *infra.*

In defense of the Board's characterization of conferenc-
ing and proof thereof as jurisdictional, the Carrier points
to the NRAB's Circular One procedural regulations, see
*supra*, at 3–4, which provide: "No petition shall be consid-
ered by any division of the Board unless the subject mat-
ter has been handled in accordance with the provisions of
the [RLA]." 29 CFR §301.2(b). But that provision, as
other prescriptions in Circular One, is a claims-processing
rule. Congress gave the Board no authority to adopt rules
of jurisdictional dimension. See 45 U. S. C. §153 First (v)
(authorizing the NRAB to "adopt such rules as it deems
necessary to control proceedings before the respective

——————

[8] The RLA states, in §152 First, a general duty "to settle all disputes,"
and, in §152 Second, a more specific duty to "conference." These provi-
sions apply to all disputes in the railroad industry, major as well as
minor. They also apply to disputes in the airline industry, over which
the NRAB has no jurisdiction. §181. Neither provision "speak[s] in
jurisdictional terms or refer[s] in any way to the jurisdiction of the"
NRAB. *Zipes*, 455 U. S., at 394.

divisions and not in conflict with the provisions of this section"). And when the fact of conferencing is genuinely contested, we see no reason why the panel could not adjourn the proceeding pending cure of any lapse. Circular One does not exclude such a sensible solution.

The Carrier cites NRAB decisions that allegedly support characterization of conferencing as jurisdictional. If the NRAB lacks authority to define the jurisdiction of its panels, however, surely the panels themselves lack that authority. Furthermore, NRAB panels have variously addressed the matter. For example, in NRAB Third Div. Award No. 15880 (Oct. 26, 1967), the panel, although characterizing the conferencing requirement as "jurisdictional," said that "[i]f one of the parties refuses or fails to avail itself of a conference where there is an opportunity to do so, it cannot then assert the defense of a lack of jurisdiction." *Id.,* at 2. See also NRAB Fourth Div. Award No. 5074 (June 21, 2001) (same); NRAB Third Div. Award No. 28147 (Oct. 16, 1989) (same). Cf. *Arbaugh*, 546 U. S., at 511 ("unrefined" uses of the word "jurisdiction" are entitled to "no precedential effect" (internal quotation marks omitted)). And in NRAB First Div. Award No. 23867, p. 5 (Apr. 7, 1988), the panel observed that the ordinary remedy for lack of conferencing is to "dismiss th[e] claim without prejudice to allow Claimant to cure the jurisdictional defect." That panel reached the merits nevertheless. *Ibid.* Cf. *Steel Co.*, 523 U. S., at 94 ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the [tribunal] is that of announcing the fact and dismissing the cause" (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1869)).). We note, in addition, the acknowledgment of the Carrier's counsel that, if conferencing has not occurred, NRAB panels have stayed arbitration to allow the parties to confer. Tr. of Oral Arg.

10, 22.[9]

## B

The RLA provides that, when on-property proceedings do not yield settlement, both parties or either party may refer the case to the Board "with a full statement of the facts and all supporting data bearing upon the disputes." §153 First (i).   Circular One correspondingly instructs employees seeking Board adjudication "[to] set forth all relevant, argumentative facts" and "affirmatively show the same to have been presented to the carrier and made a part of the particular question in dispute."   29 CFR §301.5(d); see §301.5(e) (similar instruction addressed to carriers).   Conferencing, the Carrier urged, is a "relevant, argumentative fac[t]," so proof thereof must accompany party submissions.

As earlier explained, see *supra*, at 14, instructions on party submissions—essentially pleading instructions—are claim-processing, not jurisdictional, rules.   Moreover, the Board itself has recognized that conferencing may not be a "question in dispute."   It has counseled parties submitting joint exhibits "to omit documents that are unimportant and/or irrelevant to the disposition of the [case]; for example . . . letters requesting a conference (assuming that is *not* an issue in the dispute)."   NRAB Instructions Sheet, Joint Exh. Program, p. 5 (July 1, 2003), online at http://www.nmb.gov/arbitration/nrab-instruc.pdf (as visited Dec. 3, 2009, and available in Clerk of Court's case

---

[9] While holding that the panel did not lack jurisdiction over the employees' claims, we recognize the Board's authority to adopt claim-processing rules backed by effective sanctions.   See *supra*, at 3; cf. Fed. Rule Civ. Proc. 37(b)(2) (specifying sanctions, including dismissal, for failure to comply with discovery orders); Rule 41(b) (authorizing involuntary dismissal for failure to prosecute or to comply with rules of procedure or court orders).   We also recognize that NRAB panels, in managing individual arbitrations, may prescribe and enforce reasonable procedural requirements.

file).  It bears repetition here that neither the Union nor the Carrier, in its submissions to the Board, identified conferencing as a "question in dispute."  See *supra*, at 7.

It makes sense to exclude at the arbitration stage newly presented "data . . . in support of [the] employee['s] [grievance]," 29 CFR §301.5(d)—evidence the carrier had no opportunity to consider prearbitration.  A contrary rule would sandbag the carrier.  But conferencing is not a fact bearing on the merits of a grievance.  Indeed, there may be no disagreement at all about the occurrence of conferencing, as the Union believed to be the case here.  Moreover, the RLA respects the right of the parties to order for themselves the conference procedures they will follow.  See 45 U. S. C. §152 Sixth ("[N]othing in this chapter shall be construed to supersede the provisions of any agreement (as to conferences) . . . in effect between the parties.").  In sum, neither the RLA nor Circular One could plausibly be read to require, as a prerequisite to the NRAB's exercise of jurisdiction, submission of proof of conferencing.

*     *     *

By refusing to adjudicate cases on the false premise that it lacked power to hear them, the NRAB panel failed "to conform, or confine itself," to the jurisdiction Congress gave it.  We therefore affirm the judgment of the Court of Appeals for the Seventh Circuit.

*It is so ordered.*