KAREN LECRAFT HENDERSON, Circuit Judge,
concurring in part and dissenting in part:
In no uncertain terms, PHH has asked this Court to vacate the CFPB’s order, outlining three distinct reasons why it is entitled to that relief. As my colleagues ably demonstrate, PHH’s statutory arguments are sufficient to accomplish its goal—I agree that: (1) the Bureau’s interpretation of section 8(c)(2) contravenes the language of the statute; (2) “action” in 12 U.S.C. § 2614 includes enforcement proceedings brought by the Bureau for a violation of section 8(a) and a three-year statute of limitations applies to those proceedings; (3) the Bureau’s interpretation of section 8(c)(2) is a new interpretation retroactively applied against PHH without fair notice; and (4) although the Bureau has the authority to order disgorgement as a sanction under 12 U.S.C. § 5565(a)(2)(D), the amount of any disgorgement award must be reduced by the amount the captive reinsurer paid the insurers for their reinsurance claims.[1] But my colleagues don’t stop there. Instead, they unnecessarily reach PHH’s constitutional challenge, thereby rejecting one of the most fundamental tenets of judicial decisionmaking. With respect, I cannot join them in this departure from longstanding precedent.
Although courts remain resolute in “our duty as the bulwar[k] of a limited constitution against legislative encroachments,” at the same time we recognize “a well-established principle governing the prudent exercise of this Court’s jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.” Nw. Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 205, 129 S.Ct. 2504, 174 L.Ed.2d 140 (2009) (quoting The Federalist No. 78, p. 526 (J. Cooke ed. 1961) (A. Hamilton); Rostker v. Goldberg, 453 U.S. 57, 64, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981)) (internal quotations omitted). An unbroken line of Supreme Court cases teaches that “[i]t is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.” Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandéis, J., concurring); accord Bond v. United States, — U.S. -, 134 S.Ct. 2077, 2087, 189 L.Ed.2d 1 (2014); Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 80, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009); Greater New Orleans Broad. Ass’n, Inc. v. United States, 527 U.S. 173, 184, 119 S.Ct. 1923, *57 144 L.Ed.2d 161 (1999); Dep’t of Commerce v. U.S. House of Representatives, 525 U.S. 316, 343, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999); Blum v. Bacon, 457 U.S. 132, 137, 102 S.Ct. 2355, 72 L.Ed.2d 728 (1982).
Determining the applicability of this judicial restraint principle is not a difficult task; indeed, a two-step inquiry decides whether constitutional analysis is necessary. First, we ask what relief a party seeks. See Nw. Austin Mun. Util. Dist. No. One, 557 U.S. at 205, 129 S.Ct. 2504 (determining whether statutory remedy affords aggrieved party “all the relief it seeks”). Federal Rule of Appellate Procedure 28(a)(9) makes this simple, as it requires that the party’s brief include “a short conclusion stating the precise relief sought.” Fed. R. App. Pro. 28(a)(9) (emphasis added). PHH makes its requested relief quite clear: “the appropriate remedy ... is vacatur.”[2] Petitioners’ Br. at 61.
The next question, then, is whether the court can provide the requested relief—to its fullest extent—on statutory grounds. See Nw. Austin Mun. Util. Dist. No. One, 557 U.S. at 205, 129 S.Ct. 2504. If so, we are to leave any constitutional question for another day. See Ashwander, 297 U.S. at 347, 56 S.Ct. 466 (Brandéis, J., concurring) (“The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.”). Indeed, my colleagues conclude that vacatur is warranted on statutory grounds. Maj. Op. at Parts IV, V. Because the statutory holding is sufficient, I believe our analysis should begin and end there. United States v. Wells Fargo Bank, 485 U.S. 351, 354, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988) (“[0]ur established practice is. to resolve statutory questions at the outset where to do so might obviate the need to consider a constitutional issue.”).
My colleagues; however, insist that the constitutional issues be addressed before the statutory ones because resolution of the former could afford PHH broader relief. Maj. Op. at 9 n. 1. Notwithstanding their approach turns on its head the “fundamental rule of judicial restraint” that “[pjrior to reaching' any constitutional questions, federal courts must consider nonconstitutional grounds for decision,” Jean v. Nelson, 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); Gulf Oil Co. v. Bernard, 452 U.S. 89, 99, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); Mobile v. Bolden, 446 U.S. 55, 60 (1980); Kolender v. Lawson, 461 U.S. 352, 361, n. 10, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), it misses the point—our focus should be on providing the full relief requested by the prevailing party, not the broadest relief implicated by its claim. See Nw. Austin Mun. Util. Dist. No. One, 557 U.S. at 205, 129 S.Ct. 2504. In fact, in Nw. Austin Mun. Util. Dist. No. One, the Supreme' Court rejected the argument that resolving the case solely on statutory grounds “would • not afford [a plaintiff] all the relief it seeks”—even though the plaintiffs constitutional challenge, if successful, would provide broader relief—because the plaintiff had ^expressly describe[d] its constitutional challenge ... *58 as ‘being in the alternative’ to its statutory argument.” Id. at 205-06, 129 S.Ct. 2504; cf. Zobrest v. Catalina Foothills School Dist., 509 U.S. 1, 7-8, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993) (reaching Establishment Clause argument despite statutory ground because “[respondent did not urge any statutory grounds for affirmance upon the Court of Appeals ... [and] [i]n the District Court, too, the parties chose to litigate the case on the federal constitutional issues alone”). Similarly, PHH has expressly relied on “three independent reasons” why vacatur is appropriate, treating its constitutional arguments as alternatives to its statutory counterparts. Petitioners’ Br. at 23. Thus, our duty is quite clear: “[A] federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available.” Jean v. Nelson, 472 U.S. at 854, 105 S.Ct. 2992 (1985); Spector Motor Serv. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944) (“If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.”).
Nevertheless, my colleagues conclude that we must decide the constitutional issue because it involves “a fundamental constitutional challenge to the very structure or existence of an agency enforcing the law against it.” Maj. Op. at 9 n. 1. I again believe prudential considerations counsel against our reaching out to invalidate the for cause removal provision. See Spector Motor Serv., 323 U.S. at 105, 65 S.Ct. 152.
First, the Supreme Court’s leading removal caselaw is distinguishable. In both Myers v. United States, 272 U.S. 52, 106-07, 47 S.Ct. 21, 71 L.Ed. 160 (1926), and Humphrey’s Executor v. United States, 295 U.S. 602, 618-19, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), the suit was brought by the officer removable for cause only and only after he had been removed from office. In Myers, the President, through the Postmaster General, removed a postmaster (Myers). 272 U.S. at 106, 47 S.Ct. 21. Myers protested the removal and eventually brought suit for back pay. Id. After determining that laches did not prevent Myers from challenging his removal, the Court had to resolve whether the President had lawfully removed him. Id. at 106-07, 47 S.Ct. 21. Humphrey’s Executor presented a similar question—the President removed a member (Humphrey) of the Federal Trade Commission (FTC) before his seven-year term concluded and without cause. 295 U.S. at 618-19, 55 S.Ct. 869. Humphrey then sought back pay. Id. The Court could not decide his back pay claim without first addressing the validity of Humphrey’s for-cause only removal restriction on the President’s Article II removal power. Id. at 626-31, 55 S.Ct. 869.
The holdings in Morrison v. Olson, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), and Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010), are equally inapposite. In Morrison, the appellees sought to quash subpoenas issued on behalf of the independent counsel by challenging the constitutionality of the legislation providing for appointment of an independent counsel removable by the Attorney General for cause only. 487 U.S. at 668-69, 108 S.Ct. 2597. Other than the collateral issue of the proper scope of review of a contempt order, id. at 669-70, 108 S.Ct. 2597, the only challenges the appellees made throughout the litigation were constitutional in nature. Id. at 668-70, 108 S.Ct. 2597. Accordingly, although there were several grounds on which the appellees could have won their requested relief (quashing the subpoenas), each re *59 quired consideration of a constitutional issue.
Free Enterprise Fund is perhaps the closest precedent yet it too is distinguishable. The Public Company Accounting Oversight Board (PCAOB) investigated an accounting firm for potential violations of statutes and regulations relating to the auditing of public companies. Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd., No. 06-0217, 2007 WL 891675, at *2 (D.D.C. March 21, 2007). The PCAOB issued a report detailing the result of its preliminary investigation and plaintiffs Free Enterprise Fund and its accounting-firm member brought suit to enjoin the ongoing disciplinary proceedings. Id. They sought a declaratory judgment “that the provisions of the Act establishing the PCAOB are unconstitutional” and “an order enjoining the Board from taking any further action against [the accounting firm].” Id. Thus, the only challenge was a facial one to the constitutionality of the PCAOB—there was no statutory ground on which to reverse any PCAOB action because it had not yet taken action against the firm. Id. at *6, 113 S.Ct. 2462. On review, we addressed the “facial challenge” that “Title I of the Sarbanes-Oxley Act of 2002 ... violates the Appointments Clause of the Constitution and separation of powers because it does not permit adequate Presidential control of the [PCAOB].” Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd., 537 F.3d 667, 668 (D.C. Cir. 2008). Likewise, the Supreme Court granted relief on the constitutional removal power ground.[3] 561 U.S. at 510-14, 130 S.Ct. 3138.
This case does not fit the Court’s removal precedents. Myers and Humphrey’s Executor raised only constitutional questions. And unlike the challenges in Morrison and in Free Enterprise Fund, PHH has challenged—successfully—the Bureau’s exercise of its statutory authority. Again, PHH can obtain full relief without our addressing the Bureau’s challenged structure.[4] Although I agree that “[w]hen constitutional questions are ‘indispensably necessary’ to resolving the case at hand, ‘the court must meet and decide them.’ ” Citizens United v. FEC, 558 U.S. 310, 375, 130 S.Ct. 876, 175 L.Ed.2d 753 (Roberts, C.J., concurring) (quoting Ex parte Randolph, 20 F.Cas. 242, 254 (No. 11, 558) (C.C.Va. 1833) (Marshall, C.J.)), I do not believe that it is “indispensably necessary” to resolve the for-cause removal issue here.
To the extent the majority concludes that judicial restraint is irrelevant because PHH raises a structural constitutional issue, Supreme Court precedent on waiver of structural constitutional arguments advises otherwise. It is settled that a nonju-risdictional constitutional argument, including an Article III structural claim, can be waived. See, e.g., Plant v. Spendthrift Farm, Inc., 514 U.S. 211, 231-32, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (“[T]he proposition that legal defenses based upon doctrines central to the courts’ structural independence can never be waived simply *60 does not accord with our cases.”); see also Al Bahlul v. United States, 792 F.3d 1, 33 (D.C. Cir. 2015) (Henderson, J., dissenting) (“[T]he only nonforfeitable argument is subject-matter jurisdiction.”). Although waiver of an Article III structural challenge “cannot be dispositive,” Commodity Future Trading Commission v. Schor, 478 U.S. 833, 851, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), the Supreme Court has recently clarified that it remains within our discretion whether to reach such a challenge. See B&B Hardware, Inc. v. Hargis Industries, Inc., — U.S.-, 135 S.Ct. 1293, 1304, 1305 n.2, 191 L.Ed.2d 222 (2015) (declining to consider Article III structure challenge not properly briefed); Wellness International Network, Ltd. v. Sharif, — U.S. -, 135 S.Ct. 1932, 1942, 1948-49, 191 L.Ed.2d 911 (2015) (reversing Seventh Circuit decision holding that Article III structural challenge could not be forfeited and remanding to determine forfeiture vel non); Plant, 514 U.S. at 231-32, 115 S.Ct. 1447 (noting Schor Court “cho[se] to consider [Schor’s] Article III challenge” notwithstanding [his] consent to jurisdiction in the Article I tribunal and waiver of that challenge). Because resolution of the constitutionality of the Bureau’s structure is unnecessary in providing PHH full relief and because the Supreme Court’s removal jurisprudence does not lead to a contrary result, I believe we should stay our hand. Greater New Orleans Broad. Ass’n, Inc. v. United States, 527 U.S. 173, 184, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999) (“It is ... an established part of our constitutional jurisprudence that we do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground.”).
Accordingly, I respectfully dissent from Parts II and III of the majority opinion. In addition, I do not join the Introduction and Summary to the extent it “hold[s] that the CFPB is unconstitutionally structured.” Maj. Op. at 8.

. My colleagues state that ‘‘PHH wants us, at a minimum, to strike down the CFPB and prevent its continued operation.” Maj. Op. at 37. Besides describing, if anything, the maximum relief available, they stray from the relief requested in PHH’s brief—vacatur. Petitioners' Br. at 61. To the extent PHH changed its requested relief at oral argument, I believe we are to choose its writing over its speech. See, e.g., Whitehead v. Food Max of Mississippi, Inc., 163 F.3d 265, 270 (5th Cir. 1998) (citing Fed. R. App, Pro. 28) (limiting relief to that requested in appellate brief rather than alternate relief first proposed at oral argument).

. The Court separately affirmed the district court’s jurisdiction based on a direct review provision of the Sarbanes-Oxley Act. 561 U.S. at 489-90, 130 S.Ct. 3138.

. I do not suggest that the Bureau is immune from challenge. A deposed director or a regulated party could challenge the constitutionality of the Bureau, either in a stand-alone constitutional challenge as in Free Enterprise Fund or as part of an appeal of a Bureau enforcement proceeding if the statutory remedy did not provide full relief. And in all likelihood, that challenge will be before this Court relatively quicldy. See, e.g., State Nat’l Bank of Big Spring v. Lew, No. CV 12-1032, 2016 WL 3812637, at *1 (D.D.C. July 12, 2016) (holding in abeyance resolution of challenge to CFPB’s constitutionality until the decision here).