[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14941
Non-Argument Calendar
_____

Agency No. A088-920-938

RIGOBERTO AVILA-SANTOYO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____
(April 12, 2013)

ON PETITION FOR REHEARING

Before DUBINA, Chief Judge, TJOFLAT, CARNES, BARKETT, HULL, MARCUS, WILSON, PRYOR, MARTIN and JORDAN, Circuit Judges, and BLACK,* Senior Circuit Judge.

_____

* Senior Circuit Judge Susan H. Black elected to participate in this decision, pursuant to 28 U.S.C. § 46(c).

PER CURIAM:

Rigoberto Avila-Santoyo, a native of Mexico, petitions for review of the Board of Immigration Appeals's ("BIA's") order dismissing his appeal from the Immigration Judge's ("IJ's") denial of his motion to reopen his removal proceedings. The BIA dismissed his appeal, concluding that it lacked jurisdiction under the departure bar[1] and, alternatively, that the motion was filed more than 90 days after Avila-Santoyo's final order of removal and was not subject to equitable tolling. Under the statutory provisions of the Immigration and Nationality Act ("INA") and its implementing regulations, an alien generally may file only one motion to reopen, and must do so no later than 90 days after the final order of removal. 8 U.S.C. § 1229a(c)(7)(A), (c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Avila-Santoyo's motion to reopen was filed after the 90-day deadline, but he sought equitable tolling of the time limitation.

The BIA rejected his equitable tolling argument relying on our circuit precedent in Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1150 (11th Cir. 2005), which held that the 90-day deadline for filing a motion to reopen is "mandatory and

---

[1] This Court held in Lin v. U.S. Att'y Gen., 681 F.3d 1236, 1241 (11th Cir. 2012), that the regulatory provision known as the "departure bar," which states that the BIA may not entertain a motion to reopen filed on behalf of a person who has departed the United States, impermissibly conflicts with the statutory right to file one motion to reopen. Accordingly, the BIA erred in concluding that the IJ lacked jurisdiction to reopen the removal proceedings under the departure bar at 8 C.F.R. § 1003.23(b)(1).

jurisdictional, and, therefore, it is not subject to equitable tolling." This court, in an unpublished panel decision, Avila-Santoyo v. U.S. Att'y Gen., 487 F. App'x 478, 2012 WL 3530679 (11th Cir. 2012), affirmed the BIA's determination on the ground that the 90-day deadline is jurisdictional and not subject to equitable tolling.

A majority of this Court has now voted to vacate the panel opinion in this case, and after briefing by the parties and in accordance with current Supreme Court precedent, we now hold that the 90-day deadline to file a motion to reopen immigration removal proceedings is not jurisdictional, but rather is a claim-processing rule subject to equitable tolling. Today's holding is based on several recent Supreme Court decisions rendered since the time we decided Abdi and brings our Court in line with those of our sister circuits which have addressed this same issue.

I.    The 90-day deadline for a motion to reopen is a non-jurisdictional claim-processing rule

In Abdi, we applied the reasoning from an earlier decision, Anin v. Reno, 188 F.3d 1273, 1278 (11th Cir. 1999), in which we held that the 180-day deadline for a motion to reopen in absentia removal proceedings is jurisdictional and mandatory and hence not subject to equitable tolling. In Anin, we noted that "[c]ongressional filing deadlines are given a literal reading by federal courts," id. at 1278, and that according to the Supreme Court "filing deadlines, like statutes of

3

limitations, necessarily operate harshly and arbitrarily with respect to persons who fall just on the other side of them, but if the concept is to have any content, the deadline must be enforced," id. (quoting United States v. Locke, 471 U.S. 84, 101 (1985)).

However, the Supreme Court subsequently acknowledged "that the word 'jurisdiction' has been used by courts, including this Court, to convey many, too many, meanings," and that it "ha[s] cautioned, in recent decisions, against profligate use of the term."  Union Pac. R.R. Co. v. Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, —, 130 S. Ct. 584, 596 (2009) (internal quotation marks omitted); see also Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); Arbaugh v. Y&H Corp., 546 U.S. 500, 510 (2006).

Attempting to clarify its meaning and to "bring some discipline to the use of" the jurisdictional label, the Court has "urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction."  Henderson v. Shinseki, 131 S. Ct. 1197, 1202–03 (2011) (citing Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, —, 130 S. Ct. 1237, 1243–44 (2010); Kontrick v. Ryan, 540 U.S. 443, 455 (2004)).  The Court has noted that courts "have more than occasionally used the term 'jurisdictional' to describe emphatic time prescriptions in rules of court" even

4

where those rules "are claim-processing rules that do not delineate what cases . . . courts are competent to adjudicate." Kontrick, 540 U.S. at 454.  The Court pointed out that there is "a critical difference between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule." Id. at 456.  Specifically, "a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." Id.  Thus, so-called "claim-processing rules," which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," generally should not be deemed jurisdictional.  Henderson, 131 S. Ct. at 1203 ("[R]ules, even if important and mandatory, we have said, should not be given the jurisdictional brand."); see also Arbaugh, 546 U.S. at 510 ("[W]e have clarified that time prescriptions, however emphatic, are not properly typed jurisdictional." (internal quotation marks omitted)).

The Court has further explained that in trying to reduce the reckless use of the jurisdictional label, it has "adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional." Auburn, 133 S. Ct. at 824 (citing Arbaugh, 546 U.S. at 516).  The critical consideration in resolving whether the "jurisdictional label" is appropriately attached to a particular

5

procedural rule, is whether "there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.'" Henderson, 131 S. Ct. at 1203. "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." Arbaugh, 546 U.S. at 515–16. Such a clear indication of Congressional intent is not, however, limited to "magic words." Henderson, 131 S. Ct. at 1203. "[C]ontext, including [the Supreme Court's] interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional." Reed Elsevier, 130 S. Ct. at 1248. Accordingly, the Supreme Court has explained, "[w]hen a long line of this Court's decisions left undisturbed by Congress[] has treated a similar requirement as 'jurisdictional,' we will presume that Congress intended to follow that course." Henderson, 131 S. Ct. at 1203 (internal citation and quotation marks omitted).[2]

In Henderson, the Court identified three factors as germane to whether Congress intended courts to treat the 120-day deadline for seeking review of a decision of the Board of Veterans' Appeals in the Veterans Court as jurisdictional. First, the Court looked at the plain language of the statute[3] which set the 120-day

---

[2] Cf. Bowles v. Russell, 551 U.S. 205, 209 n.2 (2007) (holding that a statutory deadline for taking an appeal in a civil case is jurisdictional based, in part, on a "century's worth of precedent and practice in American courts").

[3] The relevant statute provided in pertinent part that "a person adversely affected by [a final] decision [of the Veterans Board] shall file a notice of appeal with the [Veterans] Court

deadline and noted that it did "not suggest, much less provide clear evidence, that the provision was meant to carry jurisdictional consequences." Id. at 1204. Next, the Court considered the provision's placement within the overall statute, concluding that its location in the subchapter entitled "Procedure," rather than in a separate subchapter entitled "Organization and Jurisdiction," suggested that Congress viewed the 120-day limit as a claim-processing rule. Id. at 1205. Finally, the Court considered the "characteristics of the review scheme" for the adjudication of veterans' benefits, which it noted was solicitous to veterans and contained provisions that encouraged favorable review of a veteran's claim. Id. at 1205–06. Accordingly, the Court concluded that it did "not find any clear indication that the 120-day limit was intended to carry the harsh consequences that accompany the jurisdiction tag." Id. at 1206.

Here, when we apply these same principles to the 90-day deadline for filing a motion to reopen, we conclude, as the government now also concedes, that this procedural rule is a non-jurisdictional claim-processing rule. First, there is nothing in the plain text of 8 U.S.C. § 1229a(c)(7)(C)(i) that gives any indication, "much less provide[s] clear evidence, that the provision was meant to carry jurisdictional consequences." See Henderson, 131 S. Ct. at 1204. The statute, similar to the statute at issue in Henderson, simply provides that "[e]xcept as provided in this

within 120 days after the date on which notice of the decision is mailed." Henderson, 131 S. Ct. at 1204.

7

subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i). The statute does not speak in terms of subject matter jurisdiction, i.e. "a tribunal's power to hear a case." Union Pacific, 558 U.S. at —, 130 S. Ct. at 596 (internal quotation marks omitted). Moreover, that the statute is written in mandatory terms is of no moment as the Supreme Court has rejected the idea that "all mandatory 'prescriptions, however emphatic, are . . . properly typed jurisdictional.'" Id. (quoting Arbaugh, 546 U.S. at 510); see also Kontrick, 540 U.S. at 454 (explaining that a time limitation may be emphatic without being jurisdictional).

Next, the placement of the 90-day time limitation within the INA supports the conclusion that this statutory provision is a claim-processing rule and not jurisdictional. Section 1229a(c)(7)(C)(i) is located within a section of the INA entitled "Removal Proceedings," which contains numerous other provisions governing the conduct of the parties, burdens of proof, rights of the alien, evidentiary considerations, and the form and location of the removal proceedings. See generally 8 U.S.C. § 1229a. All of these surrounding provisions address the various procedural and administrative aspects of a removal proceeding and therefore leave us with no clear indication that Congress wanted the 90-day deadline for filing a motion to reopen to be treated as anything other than a non-jurisdictional claim-processing rule, i.e. one that "seek[s] to promote the orderly

8

progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson, 131 S. Ct. at 1203.

Finally, when we consider this statutory provision within the review scheme that Congress created for motions to reopen, we find that this rule is appropriately viewed as not being jurisdictional. The 90-day deadline was originally promulgated as a regulation upon the instruction of Congress to the Attorney General to establish a time period for the filing of motions to reopen removal proceedings. See Immigration Act of 1990, Pub. L. No. 101-649, § 545(d), 104 Stat. 4978, 5066 (1990). Prior to that time, there were no limitations, statutory or regulatory, on the time frame for seeking reopening of removal proceedings. See Iavorski v. INS, 232 F.3d 124, 130–31 (2d Cir. 2000); Socop-Gonzalez v. INS, 272 F.3d 1176, 1190 (9th Cir. 2001) (en banc). According to the Supreme Court, a "principal purpose" of this change to the INA was to lessen the "problem of successive and frivolous administrative appeals and motions." Stone v. INS, 514 U.S. 386, 400 (1995).

When issuing the regulation governing the 90-day deadline, the Attorney General also promulgated related regulations providing exceptions to the time limitation for motions to reopen. For example, the BIA or the IJ is permitted to reopen removal proceedings sua sponte at any time. See 8 C.F.R. §§ 1003.2(a), 1003.23(b)(1). Reopening is also permissible, notwithstanding the 90-day

9

deadline, to apply or reapply for asylum based on changed country conditions or upon a joint motion of all parties. See 8 C.F.R. § 1003.2(c)(3)(ii)–(iii); 8 C.F.R. §1003.23(b)(4)(i), (b)(4)(iv). The time limitation also does not apply to a motion filed by the government based upon an allegation of fraud in the original proceeding. See 8 C.F.R. § 1003.2(c)(3)(iv). Finally, persons ordered removed in absentia are permitted 180 days to seek reopening following the entry of the final order of removal. See 8 C.F.R. § 1003.2(c)(3)(i). Each of these regulatory exceptions to the 90-day deadline is indicative of a certain degree of flexibility that is inherently inconsistent with the "jurisdictional label." "[T]he flexibility with which IJs and the BIA have applied these congressional restrictions on motions to reopen confirms that they are not jurisdictional." Iavorski, 232 F.3d at 132.

The current statutory provisions governing the reopening of removal proceedings were originally codified with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. In so doing, Congress merely adopted the regulatory provisions that allow one motion to reopen and the 90-day filing deadline as well as the exceptions pertaining to changed country conditions for asylum applications and the 180-day deadline for persons ordered removed in absentia. See 8 U.S.C. § 1229a(c)(7)(C)(i)–(iii). In addition, Congress has also exempted battered spouses, children and parents from the 90-day filing deadline requirement. See id. § 1229a(c)(7)(C)(iv). By adopting regulations which were

created for the purpose of curbing filing abuses, Congress has endorsed a review scheme for the filing of motions to reopen that is intended to "promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times[,]" Henderson, 131 S. Ct. at 1203, but which does not speak to the BIA's subject matter jurisdiction.

For the foregoing reasons, we overrule our circuit precedent in Abdi, and now hold that the 90-day time limit to file a  motion to reopen under 8 U.S.C. § 1229a(c)(7)(C)(i) is not jurisdictional.[4]

II.    The 90-day deadline for a motion to reopen is subject to equitable tolling

Having determined that the 90-day deadline to seek reopening is not jurisdictional, we now turn to the question of whether it is subject to equitable tolling.  We first consider the text of 8 U.S.C. § 1229a(c)(7)(C)(i), which suggests the statute is subject to equitable tolling.  The Supreme Court has explained that "[o]rdinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception."  United States v. Brockamp, 519 U.S. 347, 350 (1997) (noting, as an example of such a

---

[4] Our reasoning is equally applicable to the related statutory provision regarding the 180-day deadline to seek reopening of a removal proceeding in which an alien was ordered removed in absentia.  See 8 U.S.C. § 1229a(b)(5)(C)(i).  In Anin, we held that the 180-day deadline for reopening in absentia removal proceedings is "jurisdictional and mandatory" and therefore not subject to equitable tolling.  188 F.3d at 1278.  However, for all of the reasons underlying our decision to overrule Abdi, we recognize that the rationale underlying our decision in Anin is no longer viable as it, too, has effectively been abrogated by intervening Supreme Court precedent.

11

statute, the statutory provision which requires employment discrimination suits to be filed "[w]ithin 90 days of receipt of notice of final [EEOC] action"). Likewise here, the statutory language which simply provides that "the motion to reopen shall be filed within 90 days," 8 U.S.C. § 1229a(c)(7)(C)(i), suggests that the provision is subject to equitable tolling. Cf. Brockamp, 519 U.S. at 350–51 (holding that a statutory limitation period in the tax code that was stated in an "unusually emphatic" and "highly detailed technical manner," and was reiterated "several times in several different ways" was not subject to equitable tolling). The 90-day deadline is not "unusually generous" to the parties, which suggests that the deadline is subject to equitable tolling. See United States v. Beggerly, 524 U.S. 38, 49 (1998) (holding that an "unusually generous" 12-year statute of limitations is not subject to equitable tolling). And the 90-day deadline is part of a statutory scheme "in which laymen, unassisted by trained lawyers," sometimes initiate the process. See Auburn, 133 S. Ct. at 828.

Next, the regulations promulgated by the Attorney General confirm that this deadline is subject to equitable tolling. Specifically, the Attorney General established a regulatory exception that permits the BIA or the IJ to reopen removal proceedings sua sponte at any time and for any reason. See 8 C.F.R. §§ 1003.2(a), 1003.23(b)(1). Indeed, when enacting this regulation, the Attorney General rejected the suggestion of the public commentary for a "good cause" regulatory

exception to the time limit as unnecessary.  In so doing, the Attorney General responded that the BIA's <u>sua</u> <u>sponte</u> authority to reopen removal proceedings accomplished the same goal as a "good cause" exception.

> The Department does not agree with the commenters' suggestions that a "good cause exception" would be an appropriate procedural mechanism for addressing exceptional cases that fall beyond this rule's time and number limitations. Instead, section 3.2(a) of the rule provides a mechanism that allows the Board to reopen or reconsider <u>sua</u> <u>sponte</u> and provides a procedural vehicle for the consideration of cases with exceptional circumstances.

61 Fed. Reg. 18900-01, 18902 (April 29, 1996).  The Attorney General envisioned a regulatory regime in which the BIA or IJ may <u>sua</u> <u>sponte</u> reopen a removal proceeding for "exceptional cases that fall beyond this rule's time and number limitations."[5]  The Supreme Court has stated that the existence of regulations that permit extensions of time for filing that are based on considerations of fairness to claimants "support[s] [the] application of equitable tolling."  <u>See</u> <u>Bowen v. City of New York</u>, 476 U.S. 467, 480 n.12 (1986).

Section 1229a(c)(7)(C)(i) is subject to equitable tolling even though the statute contains enumerated exceptions to the 90-day filing deadline, including exceptions for asylum applicants, persons ordered removed <u>in absentia</u>, and

---

[5] Generally, equitable tolling requires a litigant to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005) (citing <u>Irwin</u>, 498 U.S. at 96).  We see no material distinction between the "exceptional circumstances" in the INA regulations and the "extraordinary circumstance" requirement for equitable tolling.

battered spouses, children, and parents.  The Supreme Court has explained that, although a statute may contain provisions that permit tolling in certain circumstances, the presence of these specific exceptions does not necessarily negate the intent of Congress to permit equitable tolling of the limitations period. See Holland v. Florida, 130 S. Ct. 2549, 2561–62 (2010) (holding that the one-year limitations period for state prisoners to seek federal habeas relief is subject to equitable tolling, despite that the limitations period contains a provision that permits tolling in one circumstance and contains multiple provisions relating to the events that trigger its running).  In Brockamp, the Supreme Court held that a provision of the tax code that set forth "very specific exceptions" to its basic time limit indicated to the Court "that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." Brockamp, 519 U.S. at 352.  But the provision in that case also used "highly detailed" and "technical" language, "se[t] forth its time limitations in usually emphatic form," "reiterate[d] its limitations several times in several different ways," and concerned an "underlying subject matter," tax collection, with respect to which there would have been substantial practical consequences of permitting tolling.  Id. at 350–52.  The 90-day limitations period under 8 U.S.C. § 1229a(c)(7)(C)(i) and its exceptions are not particularly detailed or technical, the statute does not set forth its limitations period in unusually emphatic form or

14

reiterate the limitations period several times in several different ways, and the availability of equitable tolling in the context of motions to reopen removal orders will not pose substantial practical consequences.

For all of these reasons, we agree with every other circuit to have addressed this issue and found equitable tolling to be applicable. See Harchenko v. INS, 379 F.3d 405, 410 (6th Cir. 2004); Riley v. INS, 310 F.3d 1253, 1258 (10th Cir. 2002); Socop-Gonzalez, 272 F.3d at 1190; Iavorski, 232 F.3d at 130. In addition, the Third and Seventh Circuits, in addressing the 180-day deadline for seeking reopening of an in absentia order of removal, have applied the same reasoning and likewise held that this deadline is not jurisdictional and is subject to equitable tolling. See Pervaiz v. Gonzales, 405 F.3d 488, 490 (7th Cir. 2005); Borges v. Gonzales, 402 F.3d 398, 406 (3d Cir. 2005). The government, essentially in passing, suggests that we not join the circuit precedent cited above, but rather, permit the BIA to decide, in the first instance, whether this statutory provision is subject to equitable tolling. [6] In light of the statute, the regulations, the cases and the rationale cited above, we see no reason to do so.

---

[6] In support of its position, the government relies on the Supreme Court's recent decision in Auburn, in which the Court held that the 180-day statutory time limit for a medical provider to appeal a Medicare reimbursement determination to an administrative review board was not jurisdictional but also not subject to equitable tolling. 133 S. Ct. 828–29. In so concluding, the Court relied on the fact that the agency had promulgated an implementing regulation that "allowed only a distinctly limited extension of time to appeal to the [review board]." Id. at 826. The Court reasoned that equitable tolling of the statute "would essentially gut the Secretary's

15

Having concluded that the 90-day deadline for a motion to reopen is a non-jurisdictional claim-processing rule subject to equitable tolling, we GRANT Avila-Santoyo's petition, VACATE the BIA's order denying reopening, and REMAND to the BIA to consider whether to grant Avila-Santoyo's request for equitable tolling.

**PETITION GRANTED, VACATED and REMANDED.**

---

requirement that an appeal to the Board 'shall be dismissed'" unless it met the limited provisions of the regulation.  Id.

We do not find that Auburn requires the conclusion that equitable tolling is unavailable to overcome the 90-day deadline to reopen immigration removal proceedings.  Unlike the regulation at issue in Auburn, the INA regulations governing reopening, including the several exceptions as previously outlined herein, are not limited to a very discrete and time-limited extension as is the regulation at issue in Auburn.  Instead the Attorney General established several and varied exceptions to the 90-day time limit, and thus, we cannot say that also allowing for equitable tolling would "essentially gut" the regulatory scheme envisioned by the Attorney General.

16