[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11916
Non-Argument Calendar
_____

Agency No. A076-999-991

KAI LIN ZHENG,
a.k.a. Motoi Yamaguchi,
a.k.a. Kailin Zheng,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 9, 2013)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Kai Lin Zheng seeks review of the Board of Immigration Appeals's ("BIA") denial of her motion to reopen her removal proceedings, filed pursuant to 8 C.F.R. § 1003.2(c). After review, we dismiss in part and deny in part the petition for review.

## I.  BACKGROUND

### A.    Original Removal Proceedings

Zheng is a native and citizen of China. On May 4, 2001, Zheng arrived at Orlando Sanford International Airport without a valid entry document. During a credible fear interview, Zheng said that she feared persecution in China because she is Catholic.

On May 10, 2001, Zheng was served with a Notice to Appear ("NTA"), charging her with removability: (1) as an alien who sought to gain admission to the United States by fraud or willfully misrepresenting a material fact, pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i); and (2) as an immigrant who was not in possession of a valid visa, passport, or other valid entry document or document of identity or nationality, pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). At a master calendar hearing, Zheng conceded removability on the NTA's second ground and stated her intent to file an asylum application.

About a year later, Zheng filed an asylum application signed and dated May 21, 2002. Her application claimed she feared she would be persecuted in China based on her opposition to China's family planning policy, which was due to her Catholic religion. Zheng stated she had been arrested and detained after she helped hide her cousin, who was pregnant with a second child.

After a 2003 merits hearing, an Immigration Judge ("IJ") found Zheng's testimony was not credible, denied her asylum application, and ordered her removed to China. Zheng's attorney, Gang Zhou, timely filed a notice of appeal with the BIA, but indicated that Zheng intended to file a separate written brief or statement. However, no written brief or statement was filed. On February 25, 2005, the BIA summarily dismissed Zheng's appeal for failure to file a separate written brief or statement.

**B.    Motion to Reopen**

Seven years later, in April 2012, Zheng, through new counsel, filed a motion to reopen her proceedings with the BIA. Zheng's motion to reopen raised two grounds: (1) ineffective assistance of her prior counsel; and (2) newly discovered evidence that Zheng would be persecuted in China based on her post-hearing activities of sending Catholic materials to friends and family in China. In addition, Zheng's motion to reopen asked the BIA to exercise its discretion to sua sponte reopen proceedings.

With respect to the first ground, Zheng alleged that her prior counsel, Zhou, was ineffective for failing to file a separate written brief in support of her appeal to the BIA.  Zheng's attached affidavit, dated May 6, 2009, stated that her prior counsel, Zhou, failed to file an appeal brief to the BIA, that Zheng was not informed of Zhou's failure, and that Zheng did not know that her appeal had been summarily dismissed because of Zhou's failure until she retained her current counsel.  Zheng asked the BIA to reopen proceedings so she could present her BIA appeal, and attached a copy of her proposed appeal brief.

Zheng's motion to reopen also asserted that she had complied with the procedural requirements of Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988).  Zheng attached correspondence: (1) from Zheng's current counsel to Zhou, dated May 6, 2009, notifying Zhou of the ineffective assistance charge; (2) from Zhou to Zheng's current counsel, dated May 7, 2009, denying that he was ineffective; and (3) from the Departmental Disciplinary Committee of the New York Supreme Court, dated October 26, 2009, acknowledging receipt of Zheng's complaint against Zhou.

As to the second ground for reopening, Zheng argued that she had new and previously unavailable evidence establishing her well-founded fear of persecution in China "based upon events that transpired after her arrival in the United States." Zheng's submitted documents from China—three letters from family members and

a neighbor and a warrant of summon—which Zheng argued showed she had been classified as a criminal by Chinese authorities and faced severe punishment if she returned to China.

Zheng's father wrote one of the letters, dated November 1, 2010, and requested that the judge approve Zheng's appeal. Zheng's father stated that Zheng had sent Catholic materials to him, Zheng's mother, and some other relatives. When the Chinese police learned of the mailings, they came to the house on July 9, 2009. The Chinese police asked Zheng's father to call Zheng and have her return to China for interrogation. Zheng's father stated that the Chinese government had "more strict religion regulation," and people were more strictly punished for being involved with underground church gatherings.

Zheng's cousin, Xia Chen, wrote a letter very similar to the letter written by Zhen's father. Chen's letter, dated October 28, 2010, also requested that the judge approve Zheng's appeal. Chen stated that Chinese authorities learned that Zheng sent Catholic materials to Zheng's parents in China and, in July 2009, came to Chen's house and threatened to arrest Zheng and "give her sentence" if she did not return to China "for seeking reduced punishment." Chen also stated, "Currently, Chinese government has more strict way to regulate religion. If anyone joins underground church, he will get punishment like detention or even prison sentence[.]"

The letter of Zheng's former neighbor and fellow church member, Xiu Liang Wu, also requested that the judge grant Zheng's appeal.  Wu's letter, dated October 30, 2010, stated that Zheng had mailed Catholic materials to Wu to study and pass on to others.  Chinese officials learned of Zheng's letters to Wu and became aware of Wu's participation in Catholic activities in China.  Local police officers twice came to Wu's house and questioned Wu about Wu's Catholic activities and Zheng's whereabouts.  On the second visit, they arrested and fined Wu for participating in an illegal church.  Wu stated, "Presently, the Chinese government's regulations against religion became more intense and anyone participating in underground church activities would be heavily punished."

In addition, Zheng submitted an unsigned "Warrant of Summon" from the Fuzhou City Public Security Bureau dated July 9, 2009.  The warrant stated that Zheng was suspected of participating in an "evil cult organization" and distributing "evil documents."  The warrant summoned Zheng "for an investigation at the Yingzhou Police Station" on July 12, 2009.  The warrant was stamped with a seal of the "Public Security Bureau of Fuzhou City, Yingzhou Police Station."

In a supplemental motion to reopen, Zheng clarified that, in contrast to her prior asylum claim based on harboring a family planning policy violator, her "current claim for asylum is new because it is solely based upon her Catholic belief and specifically upon her mailing of religious materials to China well after her

6

removal proceedings were concluded, which were discovered by the authorities."

Zheng attached a copy of a new asylum application, filed in June 2012. Zheng

stressed that her removal proceedings should be reopened based on this new

asylum claim and also that she "warrant[ed] the extraordinary remedy of sua

sponte reopening" due to the "exceptional circumstance" of her prior counsel's

ineffective assistance.

In an attached affidavit, Zheng stated that her original asylum claim was

based on her detention for hiding her pregnant cousin and that, although Zheng

told authorities during her interrogation that she opposed China's family planning

policy because of her Catholic faith, she was not "persecuted for actually attending

any underground church or practicing Catholicism at that time, only because [she]

opposed the Family Planning Policy." Zheng further explained that her "new

claim" was based on the fact that Chinese authorities are "now looking to punish

[her] unfairly" for mailing Catholic materials to China. Zheng claimed that if she

were returned to China she would be "detained, questioned, beaten, and very likely

horribly tortured" for "supporting foreign religious institutions and practicing

unsanctioned religious beliefs."

## C.    BIA's Ruling

The BIA denied Zheng's motion to reopen as untimely because it was not

filed within ninety days of the BIA's final decision, as required by INA

7

§ 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i).  As to Zheng's claim of ineffective assistance of counsel, the BIA noted that Zheng did not learn of her former counsel's failure until she retained new counsel.  The BIA concluded, however, that Zheng had not "explained or shown how she acted with due diligence during the 7-year period since her appeal was dismissed" or "why her motion to reopen was not filed until April 2012" when her own evidence showed that she was aware of her former counsel's failure to file the brief by 2009, when she filed her disciplinary complaint.

As to Zheng's "new evidence" of a fear of religious persecution, the BIA concluded that Zheng had not shown changed conditions in China "such that her motion falls within an exception to the motion time limitations."  The BIA briefly noted that Zheng's three letters from China all claimed that the Chinese government regulated religious activities more strictly and that individuals who participated in unregistered churches faced arrest or imprisonment.  The BIA concluded, however, that Zheng's motion to reopen had not argued that the conditions in China had changed materially since her original asylum claim.  The BIA also determined that other evidence in the record indicated that the mistreatment of members of unregistered Christian churches was a "longstanding problem" in China that already existed at the time of Zheng's November 2003 removal hearing.

8

Alternatively, the BIA concluded that reopening was not warranted based on the new evidence Zheng had proffered. The BIA gave "reduced weight" to Zheng's letters from China because: (1) they were not made under penalty of perjury or sworn to by an official authorized to administer oaths; and (2) they "appear[ed] to have been prepared for purposes of litigation, as the authors express[ed] a hope that the respondent will be allowed to stay in the United States."[1]

The BIA gave no weight to the Warrant of Summon because it did not have "sufficient indicia of reliability." The BIA emphasized that the warrant had "not been authenticated pursuant to 8 C.F.R. § 1287.6 or in any manner, and d[id] not bear the signature of the individual issuing the letter." The BIA further stated that, even if it assumed the document was authentic, it did not "actually threaten any particular punishment" and did not convince the BIA that Zheng "would face any likelihood of being subjected to harm or treatment rising to the level of persecution, if she were to return to China."

Finally, the BIA rejected Zheng's suggestion that it should reopen her proceedings sua sponte under 8 C.F.R. § 1003.2(a). The BIA stated that Zheng's

---

[1]The BIA noted that the letters recounted events relating to Zheng's 2000 arrest and detention in China, but that these statements were not new facts that could not have been previously discovered. Zheng does not challenge this finding in her petition for review, and we do not address it further.

9

case did not present "'exceptional circumstances' that would warrant the Board's exercise of its discretion to reopen sua sponte."

## II.  DISCUSSION

### A.    General Principles for Motions to Reopen

The BIA may grant an alien's motion to reopen if the alien presents new evidence that is material and could not have been discovered or presented at the removal hearing.  INA § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii).  Generally, an alien can file only one motion to reopen and must do so within ninety days of the final order of removal.  Id. § 240(c)(7)(A), (C)(i), 8 U.S.C. § 1229a(c)(7)(A), (C)(i).  These time and numerical limits do not apply, however, if the alien can show "changed country conditions arising in the country of nationality."  Id. § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

Because the ninety-day deadline for filing a motion to reopen is a non-jurisdictional claim-processing rule, it is subject to equitable tolling.  Avila-Santoyo v. U.S. Att'y Gen., 713 F.3d 1357, 1359-64 (11th Cir. 2013) (en banc).  To prevail in an equitable tolling claim, the petitioner must show "(1) that he ha[d] been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."  Id. at 1363 n.5.  An ineffective assistance claim may serve as

the basis for both equitable tolling and the merits of a motion to reopen. Ruiz-Turcios v. U.S. Att'y Gen., 717 F.3d 847, 851 (11th Cir. 2013).[2]

Here, Zheng did not file her motion to reopen until seven years after entry of her final order of removal. Thus, unless Zheng showed either changed country conditions or extraordinary circumstances warranting equitable tolling, her motion to reopen was time-barred under INA § 240(c)(7)(C), 8 U.S.C. § 1229a(c)(7)(C). For the reasons that follow, we conclude we lack jurisdiction to review whether Zheng showed changed country conditions and affirm the BIA's finding that Zheng did not diligently pursue her ineffective assistance claim such that she is entitled to equitable tolling.

## B.    Changed Country Conditions

Zheng argues that her motion to reopen based on new evidence should have been granted because she made a prima facie showing of changed country conditions. We lack jurisdiction to review Zheng's changed country conditions claim, however, because she failed to exhaust this argument before the BIA.

We lack jurisdiction to consider a claim that is raised in a petition for review if the petitioner failed to exhaust her administrative remedies by raising the claim with the BIA. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th

---

[2]We review the denial of a motion to reopen for an abuse of discretion. Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009). "Our review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." Id.

11

Cir. 2006); see also INA § 242(d)(1), 8 U.S.C. § 1252(d)(1).  Moreover, we lack jurisdiction to review an unexhausted claim even if the BIA considered the claim sua sponte.  Amaya-Artunduaga, 463 F.3d at 1250-51.

In a footnote, the BIA stated that Zheng's new counseled motion to reopen did not argue that her motion fell within the changed country conditions exception to the time bar found in INA § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii). Further, we note that her counseled motion to reopen did not argue that she presented evidence that the treatment of Catholics or underground churches in China had changed since Zheng's original removal proceedings.  In fact, Zheng's motion did not mention Zheng's three letters' statements about stricter religious regulation at all.  Instead, Zheng's motion to reopen focused only on whether her new evidence met her burden to show a prima facie case of future religious persecution.  Under the circumstances, we lack jurisdiction to entertain Zheng's changed country conditions argument.

The fact that the BIA in that same footnote briefly stated that there was no changed country conditions since her earlier asylum application "does not alter our conclusion" that we lack jurisdiction.  See Amaya-Artunduaga, 463 F.3d at 1250-51 (explaining that when the BIA addresses an issue sua sponte, "we cannot say the BIA fully considered the petitioner's claims," given that the BIA never heard the petitioner's arguments about the non-raised claim).  Accordingly, we dismiss

12

Zheng's petition to the extent she argues that her motion to reopen was not subject to the ninety-day bar because she showed changed country conditions.

We have no occasion to disturb the BIA's finding that, to the extent Zheng's motion to reopen was based on new evidence, it was time-barred.[3]

## B.    Ineffective Assistance and Equitable Tolling

Zheng argues that her motion to reopen based on her prior counsel's ineffective assistance is not time-barred.  Zheng claims she was diligent in filing her motion to reopen once she learned of her prior counsel's failure.

We conclude that the BIA did not err in refusing to equitably toll the ninety-day filing deadline.  To be entitled to equitable tolling, Zheng had to show, inter alia, that she "ha[d] been pursuing h[er] rights diligently." Avila-Santoyo, 713 F.3d at 1363 n.5.  We agree with the BIA that Zheng did not make this showing.[4]

---

[3]Because we do not disturb the BIA's denial of her motion to reopen based on new evidence as untimely, we need not address Zheng's other arguments regarding the BIA's ruling on the merits that Zheng's new evidence of future religious persecution was insufficient to carry her burden to show eligibility for asylum and, in particular, Zheng's challenge to the weight the BIA assigned her new evidence.

[4]We note that, at the time Zheng filed, and the BIA denied, her motion to reopen, the ninety-day deadline for filing motions to reopen was considered mandatory and jurisdictional and, thus, not subject to equitable tolling.  See Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1150 (11th Cir. 2008).  Nonetheless, Zheng's motion to reopen implicitly argued that her failure to file within the ninety-day deadline should be excused by her counsel's ineffective assistance. Furthermore, the BIA's ruling reflects that the BIA considered and rejected Zheng's argument when it concluded that reopening was not warranted because Zheng had not shown due diligence in filing her motion.

Shortly after Zheng filed her petition for review, but prior to her filing of her initial brief, this Court overruled Abdi and determined that the ninety-day filing deadline was subject to equitable tolling.  See Avila-Santoyo, 713 F.3d at 1359.  Despite the change in the law, Zheng's

According to Zheng's affidavit and other evidence, by May 2009, Zheng had retained new counsel and had learned that her BIA appeal had been summarily dismissed because her prior counsel had failed to file an appeal brief.  By October 2009, Zheng had filed a complaint with the Departmental Disciplinary Committee of the New York Supreme Court based on her prior counsel's failure to file the BIA brief.  Yet, she did not file her motion to reopen with the BIA until April 2012, almost three years after learning about the alleged ineffective assistance, and thirty months after filing her disciplinary complaint.  Under the circumstances, we readily conclude that the BIA did not err in ruling that Zheng did not diligently pursue her rights.

Zheng argues that her delay between filing her disciplinary complaint and filing her motion to reopen was "reasonable in light of the complexity of Petitioner's numerous issues and the necessity to prepare a proposed appeal brief for the Board to consider, since former counsel failed to do so in the first instance." Zheng does not identify which issues are so complex that they would require thirty months to prepare a motion to reopen.  Further, our review of the proposed BIA appeal brief attached to her motion to reopen does not reveal any particularly complex legal or factual issues.

---

appeal brief does not argue that her case should be remanded for consideration of equitable tolling in light of Avila-Santoyo.  Given that Zheng's appeal brief does not request a remand and that the BIA considered Zheng's lack of diligence in ruling on her motion to reopen, we conclude it is unnecessary for us to remand the case to the BIA for further consideration.

### III.  CONCLUSION

For all these reasons, the BIA did not abuse its discretion in denying

Zheng's motion to reopen as untimely under INA § 240(c)(7)(A), (C)(i), 8 U.S.C.

§ 1229a(c)(7)(A), (C)(i).[5]

**PETITION DISMISSED IN PART AND DENIED IN PART.**

---

[5]To the extent Zheng challenges the BIA's refusal to <u>sua sponte</u> reopen her removal proceedings, we lack jurisdiction to review this discretionary ruling under 8 C.F.R. § 1003.2(a). <u>See</u> <u>Lenis v. U.S. Att'y Gen.</u>, 525 F.3d 1291, 1292-93 (11th Cir. 2008).