[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14572
Non-Argument Calendar

_____

Agency No. A205-653-890


HERNAN MARTIN GUERRA-MAYORCA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 27, 2021)

Before MARTIN, LAGOA, and BLACK, Circuit Judges.

PER CURIAM:

Hernan Guerra-Mayorca (Guerra) seeks review of the Board of Immigration Appeals' (BIA) denial of his motion to reopen his removal proceedings. The BIA denied the motion as untimely and alternatively found Garcia was ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1) because he had not accrued ten years of continuous physical presence in the United States before the stop-time rule was triggered. Guerra argues his motion to reopen raised an equitable tolling argument to which the BIA failed to give reasoned consideration. He also argues the BIA abused its discretion in finding his deficient Notice to Appear (NTA), which omitted the date and time of his initial hearing, was cured by a subsequent notice of hearing, thereby triggering the stop-time rule. After review,[1] we dismiss the petition for review in part and deny it part.

An alien must file a motion to reopen his removal proceedings within 90 days of the date of the final administrative order of removal, subject to several statutory exceptions. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). It is undisputed that Guerra's April 29, 2019, motion to reopen was untimely on its face, as it was filed three years after the BIA dismissed his appeal of the IJ's decision on April 29, 2016.

---

[1] We generally review for abuse of discretion the BIA's denial of a motion to reopen. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). However, claims that the agency failed to give reasoned consideration to an issue or applied the wrong legal standard are questions of law reviewed de novo. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). We review our subject matter jurisdiction de novo. *Id.*

However, the statutory 90-day deadline is subject to equitable tolling. *Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1364 (11th Cir. 2013) (en banc). To show he is eligible for equitable tolling, an alien must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Ruiz-Turcios v. U.S. Att'y Gen.*, 717 F.3d 847, 851 (11th Cir. 2013) (quotation marks omitted).

Guerra argues that his motion to reopen adequately raised an equitable tolling argument to which the BIA failed to give reasoned consideration. He contends he raised equitable tolling before the BIA because his arguments concerning his eligibility for cancellation of removal were based on new law—specifically, the Supreme Court's 2018 decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). Guerra argued in the motion to reopen that his NTA was legally deficient under *Pereira* because it did not provide the date and time of his initial hearing, and that this defect was not cured by his receipt of a subsequent notice of hearing supplying this information. Therefore, he contended, the stop-time rule was not triggered for purposes of determining whether he had accrued ten years of continuous physical presence in the United States, as required for cancellation of removal. *See* 8 U.S.C. § 1229b(d)(1) (providing the required period of continuous physical presence "shall be deemed to end . . . when the alien is served a notice to appear").

3

In a reasoned-consideration examination, we look to whether the agency has "consider[ed] the issues raised and announce[d] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 803 (11th Cir. 2016) (alteration in original) (quotation marks omitted). The BIA does not err by failing to consider an argument the petitioner did not raise before it. *See id.* at 802 (noting a petitioner cannot fault the BIA "for its failure to intuit an argument he never made").

In this case, we cannot fault the BIA for failing to address whether Guerra was entitled to equitable tolling because he did not clearly raise the issue. *See Jeune*, 810 F.3d at 803. His motion to reopen did not address or even mention its untimeliness or provide any explanation for why the statutory time limit for filing a motion to reopen should not apply. Nor did it argue Guerra satisfied the criteria for equitable tolling because: (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way. *See Ruiz-Turcios*, 717 F.3d at 851. Guerra argues he met these requirements by arguing the *Pereira* decision made him eligible for cancellation of removal and by citing it and more recent unpublished BIA decisions. We disagree. The only mention of equitable tolling in Guerra's motion to reopen was in passing, in one of the unpublished BIA decisions he attached. The BIA was not required to intuit that he was raising an equitable

tolling argument based on the untimeliness of his motion to reopen and the recency of the case law he cited. *See Jeune*, 810 F.3d at 802.

For the same reason, we lack jurisdiction to consider any underlying claim that Guerra was entitled to equitable tolling, as he did not raise it before the BIA. In other words, he failed to exhaust any such claim. *See Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (noting we lack jurisdiction to review the BIA's decision unless a petitioner has exhausted all administrative remedies available to him); *see also Jeune*, 810 F.3d at 800 (stating exhaustion requires a petitioner must raise the "core issue" on appeal and "set out any discrete arguments he relies on in support of that claim"). The exhaustion requirement precludes review of a claim that was not presented to the BIA even where the BIA elected to address the issue *sua sponte*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006).

As to the merits of Guerra's claim he was eligible for cancellation of removal, we acknowledge the BIA alternatively found that, even in light of *Pereira*, Guerra had not accrued ten years of physical presence before the stop-time rule was triggered. But we do not address that alternative finding because we conclude the BIA acted within its discretion in denying Guerra's motion to reopen

5

as untimely.  Accordingly, we dismiss Guerra's petition to the extent he argues he

was entitled to equitable tolling, and we otherwise deny the petition.[2]

**PETITION DISMISSED IN PART and DENIED IN PART**.

---

[2] Guerra also asked that the BIA exercise its *sua sponte* authority under 8 C.F.R. § 1003.2(a) to reopen his removal proceedings.  To the extent he asks us to review the BIA's refusal to do so, we are without jurisdiction to review that decision.  *See Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1294 (11th Cir. 2008).

MARTIN, Circuit Judge, dissenting:

I believe Mr. Guerra-Mayorca exhausted his claim that he is entitled to equitable tolling on his motion to reopen. And because (as a result) we have jurisdiction to reach the merits of Mr. Guerra-Mayorca's claim, I would reverse the Board of Immigration Appeals' ("BIA") decision on the merits as required by the Supreme Court's holding in Niz-Chavez v. Garland, 593 U.S. __, 141 S. Ct. 1474 (2021).

## I.

Mr. Guerra-Mayorca was issued a Notice to Appear ("NTA") in August 2013, seven years after he entered the United States. The NTA did not specify the time or date of the removal proceeding. Later, the government sent Mr. Guerra-Mayorca information about when and where he was supposed to appear for his removal proceedings.

At a hearing held in 2014, Mr. Guerra-Mayorca sought a discretionary form of relief from removal that was available at the time: prosecutorial discretion through termination or administrative closure of his case. Mr. Guerra-Mayorca sought this relief because his U.S. citizen daughter, an infant at the time, suffered from a rare blood disorder. But on the day Mr. Guerra-Mayorca was supposed to present his case for prosecutorial discretion, his attorney withdrew because Guerra-

7

Mayorca could not "meet his financial obligations" to the attorney. Mr. Guerra-Mayorca had given all his supporting documentation to his attorney and so he had nothing to present in support of his case that day. The Immigration Judge ("IJ") asked if Mr. Guerra-Mayorca wanted to pursue voluntary departure instead and Guerra-Mayorca said he did. After retaining new counsel, Mr. Guerra-Mayorca appealed the IJ's order and argued that he should not have been forced to present his case himself on the same day that his attorney withdrew from his case. The BIA rejected the argument. When Mr. Guerra-Mayorca filed a motion to reconsider in 2016, the BIA denied the motion, which then transformed Guerra-Mayorca's voluntary departure order into an order of removal. See 8 C.F.R. § 1240.26(e)(1).

In 2019, Mr. Guerra-Mayorca filed a motion to reopen, seeking cancellation of removal, a different form of discretionary relief for which he had recently become eligible. Noncitizens[1] must establish that they have been continuously present in the United States for at least ten years in order to be eligible for this form of relief. 8 U.S.C. § 1229b(b)(1)(A). According to the "stop-time rule,"

---

[1] The term "noncitizen" is the equivalent of the statutory term "alien." Nasrallah v. Barr, 590 U.S. __, 140 S. Ct. 1683, 1689 n.2 (2020); see also United States v. Estrada, 969 F.3d 1245, 1253 n.3 (11th Cir. 2020). "Alien" is increasingly recognized as an "archaic and dehumanizing" term. Maria Sacchetti, ICE, CBP to Stop Using 'Illegal Alien' and 'Assimilation' Under New Biden Administration Order, Wash. Post (Apr. 19, 2021), https://www.washingtonpost.com/immigration/illegal-alien-assimilation/2021/04/19/9a2f878e-9ebc-11eb-b7a8-014b14aeb9e4_story.html.

noncitizens stop accruing time toward that physical presence requirement when they receive an NTA, the document that formally informs noncitizens that they are being placed into removal proceedings. 8 U.S.C. § 1229b(d)(1). An NTA is a statutorily defined document and must include certain pieces of information, including the date, time, and location of the removal hearing. 8 U.S.C. § 1229(a)(1). Previously, the government maintained that it need not send a noncitizen all of the information listed in the statute in order for the stop-time rule to apply. See Niz-Chavez, 141 S. Ct. at 1479. In other words, simply by putting the noncitizen on notice that the government was charging them as removable, the noncitizen could no longer accrue time toward the physical presence requirement. Meanwhile, noncitizens would have to wait in limbo for a hearing that may not even have been scheduled.

The Supreme Court put an end to this in Pereira v. Sessions, 585 U.S. __, 138 S. Ct. 2105 (2018). The Supreme Court held that the "plain text, the statutory context, and common sense all lead inescapably and unambiguously to [the] conclusion" that an NTA must include the date, time, and location of the removal proceedings in order to trigger the stop-time rule. Id. at 2110.

Mr. Guerra-Mayorca argued in his motion to reopen that he was now eligible for cancellation of removal in light of the Supreme Court's recent decision in Pereira. Because the putative NTA Mr. Guerra-Mayorca received did not include

the time and place of his removal proceeding, Guerra-Mayorca argued that he never received an NTA that would trigger the stop-time rule.

The BIA denied Mr. Guerra-Mayorca's motion.  First, it noted that the motion is time barred, as a motion to reopen must be filed within 90 days of the final order of removal.  See 8 C.F.R. § 1003.2(c)(2).  Mr. Guerra-Mayorca filed his motion some three years after the entry of his final order of removal.  The BIA did not address the grounds for equitably tolling Mr. Guerra-Mayorca's motion.  Second, the BIA concluded that Mr. Guerra-Mayorca's argument failed on the merits.  The BIA cited its own precedent that held a deficient NTA that does not include the time and place of the removal proceeding "is perfected by the subsequent service of a notice of hearing specifying that missing information."

## II.

Noncitizens must clear only a very low bar in order to meet the exhaustion requirement.  The noncitizen does not need to "use precise legal terminology," provide a "well-developed argument," or use a "specific incantation" in order to exhaust his claim before the BIA.  Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1297–98 (11th Cir. 2015) (quotation marks omitted and alteration adopted).  Providing "information sufficient to enable the BIA to review and correct any errors below" is all the noncitizen must do.  Id. at 1297.  This lenient standard for exhaustion accommodates the severe consequences that result from failure to

exhaust.  In this circuit, exhaustion before the BIA is jurisdictional, meaning that we cannot review any claims for relief from removal that a noncitizen fails to raise before the BIA.  Id.

A motion to reopen filed pursuant to 8 C.F.R. § 1003.2 is subject to equitable tolling when the noncitizen: (1) has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in the way of the noncitizen filing on time.  Avila-Santoyo v. U.S. Att'y Gen., 713 F.3d 1357, 1363 n.5 (11th Cir. 2013) (en banc) (per curiam).  Mr. Guerra-Mayorca's entire argument was that he was entitled to cancellation of removal due to the combination of the Supreme Court's recent opinion in Pereira and the passage of time since his original removal proceedings.  Mr. Guerra-Mayorca noted that the Supreme Court's Pereira decision was "previously unavailable."  And he filed his motion to reopen soon after the Supreme Court issued its opinion and the BIA issued its first decisions granting relief on the basis of Pereira, thereby demonstrating that he diligently pursued his rights.

The majority says that Mr. Guerra-Mayorca did not meet the low bar for exhaustion because "[t]he only mention of equitable tolling in Guerra's motion to reopen was in passing."  Maj. Op. at 4.  But in so saying, the majority requires a "specific incantation," one of the very things we are prohibited from requiring noncitizens to do in order to meet the exhaustion requirement.  Indrawati, 779 F.3d

11

at 1298. All Mr. Guerra-Mayorca had to do was provide the BIA with sufficient information to determine whether he was entitled to equitable tolling. Id. at 1297. The fact that he failed to clearly label his arguments or to use precise legal terminology does not mean he failed to exhaust his claim. Notably, in arguing that he is entitled to equitable tolling in this petition for review, Mr. Guerra-Mayorca does not raise arguments or include information that was not included in his motion to reopen. Nor does the fact that the BIA failed to address whether he is entitled to equitable tolling deprive us of jurisdiction to consider Mr. Guerra-Mayorca's arguments.

Once we get to the merits of his case, it is clear that Mr. Guerra-Mayorca wins. We review the BIA's denial of a motion to reopen for abuse of discretion, but "[t]o the extent that the decision of the Board was based on a legal determination, our review is de novo." Li v. U.S. Att'y Gen., 488 F.3d 1371, 1374 (11th Cir. 2007) (per curiam). In addressing the merits of Mr. Guerra-Mayorca's motion, the BIA reasoned that he was not legally entitled to cancellation of removal. The BIA conceded that Mr. Guerra-Mayorca's original NTA was defective, but concluded that because Guerra-Mayorca received information about the time and place of his removal proceeding at a later date, the government "perfected" the defective notice and the stop-time rule was triggered when Guerra-Mayorca received the additional information.

12

The Supreme Court roundly rejected this argument in Niz-Chavez. There, the Supreme Court reasoned that because the Immigration and Nationality Act instructs the government to provide noncitizens with "a" notice to appear, an NTA must be issued as a single document to trigger the stop-time rule. Niz-Chavez, 141 S. Ct. at 1480–82. This means that the government cannot "perfect" a deficient NTA by providing the required information in piecemeal fashion. As the Supreme Court noted, adopting the government's interpretation of the statute (the same interpretation the BIA adopted when it denied Mr. Guerra-Mayorca's motion) would lead to the absurd result that the required information "might trail in over the course of weeks, months, maybe years, each containing a new morsel of vital information," all of which the individual noncitizen would have to "save and compile in order to prepare for a removal hearing." Id. at 1485.

Mr. Guerra-Mayorca never received a single document containing all the information the government was required to provide him by law. See 8 U.S.C. § 1229(a)(1). Therefore, the stop-time rule was never triggered in his case and he is entitled to show that he has accrued ten years of continuous physical presence. Because the BIA's decision was based on an erroneous interpretation of the law, I would reverse and remand to the BIA to consider whether Mr. Guerra-Mayorca meets the other criteria for cancellation of removal and, if so, whether to grant him relief. I respectfully dissent.